# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

HEDEEN INTERNATIONAL, LLC,
d/b/a FUN CITY USA,

        Plaintiff,

  v.                                        Case No. 14-C-304

OZWEST, INC, ZING TOYS, INC., and
PETER CUMMINGS,

        Defendants.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

Plaintiff Hedeen International, LLC filed this action asserting claims for unpaid royalties against defendants OzWest, Inc., and others. After OzWest filed a motion to dismiss, Plaintiff filed an amended complaint and I denied the motion to dismiss on mootness grounds. OzWest has now filed a new motion to dismiss the amended complaint. For the reasons given below, the motion will be denied.

**I. Failure to Plead "Claims"**

The amended complaint pleads no "claims," in the traditional sense. Typically a complaint will assert causes of action like "breach of contract," "unjust enrichment," or "negligence," or else it will allege violations of specific statutes. Here, by contrast, the amended complaint sets forth some ten pages of facts, including the existence of various inventions and a royalty agreement, but does not state any specific legal causes of action. OzWest argues that the failure to plead claims requires dismissal.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citation omitted). *Iqbal,* and its predecessor case *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007), created a plausibility standard that requires courts to apply a somewhat heightened standard of scrutiny to a complaint's factual allegations. But those cases did not alter the landscape in terms of pleading law. It remains true that the Federal Rules have abandoned the phrase "cause of action" in favor of the more generic term "claim for relief," which entails pleading factual material that would warrant a finding of liability. *Id.*; *see also* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004). As the Seventh Circuit noted in *Hatmaker v. Memorial Medical Center,* "[a]lthough . . . *Twombly* and . . . *Iqbal* require that a complaint in federal court allege facts sufficient to show that the case is plausible ..., they do not undermine the principle that plaintiffs in federal courts are not required to plead legal theories." Thus, although OzWest's desire to learn the exact legal theories underlying the claims brought against it is understandable, nothing in the Rules requires that level of legal pleading. Here, the gist of the complaint can readily be discerned. The complaint suggests "breach of contract and related misconduct for unpaid royalties" (ECF No. 14 at 1) and then alleges both that a contract existed and that the Defendants violated that contract by not paying royalties. This is enough to at least survive a motion to dismiss based on Fed. R. Civ. P. 8.

**II. Preemption**

OzWest also argues that to the extent any claims are stated, they are preempted by federal patent and copyright law. According to the complaint, OzWest licensed Plaintiff's idea of a "Backfire Football," also known as an Off the Wall Ball and other names. OzWest also sublicensed

the invention to other toy companies, including Defendant Zing. Eventually, OzWest and / or Zing began selling a number of toys that used the concept of Plaintiff's licensed invention. In addition, an individual affiliated with both OzWest and Zing filed for and obtained a patent that copied important parts of the licensed toy. The royalties soon dried up, with the explanation being that Zing, the sublicensee, believed its products had been sufficiently altered such that they no longer fell under the license agreement. (ECF No. 14 at ¶¶ 15-35.) Plaintiff asserts that it is due royalties on all of the toys it has identified on the grounds that the license agreement covers "items which have structural design as defined above" and that the term Licensed Product "shall be liberally construed." (ECF No. 14-1.) In other words, the parties dispute whether the new products are covered by the original license agreement.

OzWest argues that the Plaintiff's claim is preempted by federal patent law because Plaintiff is attempting to enforce patent-like rights when the toys in question were in the public domain and therefore not patentable. But the Supreme Court has upheld private licensing agreements even when the Patent and Trademark Office denied issuance of a patent. In *Aronson v. Quick Point Pencil Co.,* 440 U.S. 257, 262 (1979), the Court found that "State law is not displaced merely because the contract relates to intellectual property which may or may not be patentable." There, the licensee, who wished to get out from the agreement, argued that the agreement contravened federal patent principles that foster open exchange of public domain ideas not patented. The Court disagreed, noting that "[e]nforcement of the agreement does not withdraw any idea from the public domain." *Id.* Citing *Aronson*, the Third Circuit has found that "one who acquires a secret formula or a trade secret through a valid and binding contract ... [may not] escape from an obligation to which he bound himself simply because the secret is discovered by a third party or by the general public.") *Nova Chemicals, Inc. v. Sekisui Plastics Co., Ltd.,* 579 F.3d 319, 328-29 (3d Cir. 2009) (citation

omitted). The point of these cases is that parties may agree to license ideas or technology even of the material is not patentable, and such agreements do not violate or infringe on any federal patent principles.

*Ultra-Precision Mfg., Ltd. v. Ford Motor Co.* is not to the contrary. 411 F.3d 1369, 1380 (Fed. Cir. 2005).[1] There, a plaintiff sued on an unjust enrichment theory after Ford Motor Company used one of its ideas, which was in the public domain. The Federal Circuit found the claim preempted because it contradicted federal patent law principles. Specifically, the plaintiff was attempting to obtain through an equitable common law theory what it did not obtain through patent law. "If Ultra–Precision's unjust enrichment claim were available, a would-be inventor need not satisfy any of the rigorous standards of patentability to secure a perpetual patent-like royalty under state law based on the use of an unpatented idea." *Id.* at 1381. Here, by contrast, we do not have a theory based on unjust enrichment but a claim based on an explicit contract voluntarily entered into by two entities. Upholding the contract would merely enforce the contractual rights the parties had entered into; it would not create a generalized, patent-like right to receive royalties from complete strangers who might use the idea in the future. In *Ultra-Precision,* any member of the public would open himself up to quasi-patent infringement merely by using ideas in the public domain, whereas here any liability is due solely to the parties' voluntary decision to enter into a licensing agreement. OzWest is correct that to the extent the Plaintiff is attempting to obtain patent-like relief *outside* of the contract, he would likely be barred by preemption. But that is a question for another day.

---

[1] In its reply brief, OzWest concedes that *Aronson* solves the preemption problem, at least with respect to any contractual claims, so I address the issue only briefly.

**III. Conclusion**

For the reasons given above, the motion to dismiss is **DENIED**. The clerk will place the case on the calendar for a telephonic scheduling conference.

**SO ORDERED** this 4th day of November, 2014.

/s William C. Griesbach  
William C. Griesbach, Chief Judge  
United States District Court