UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

HEDEEN INTERNATIONAL, LLC,

    Plaintiff,

v.                                                                                                               Case No. 14-C-304

OZWEST, INC., ZING TOYS, INC. And PETER CUMMINGS,

    Defendants.

## DECISION AND ORDER

Defendant Peter Cummings moves for dismissal due to improper service of process and lack of personal jurisdiction. For the reasons given below, the motion will be granted.

**I. Service Was Proper**

Cummings is an Australian citizen who lives in Hong Kong. According to the amended complaint, he is the "principal" of Ozwest, Inc., an Oregon company. (ECF No. 14 at 2.) This is reflected in the fact that he was Ozwest's signatory on the license agreement that is the foundation of this case. (ECF No. 14-1.) On March 31, 2014, Plaintiff served Cummings by having a process server leave a copy of the summons and complaint at Ozwest's offices in Oregon. On June 4, Plaintiff's counsel mailed copies of the same documents to Cummings at the same office address. Under Oregon law, which governs service of process issues, Fed.R.Civ.P. 4(e)(1), this is known as "office service." "If the person to be served maintains an office for the conduct of business, office service may be made by leaving true copies of the summons and the complaint at such office during normal working hours with the person who is apparently in charge." Or. R. Civ. P. 7 D(2)(c). In

addition, a plaintiff "shall cause to be mailed, by first class mail, true copies of the summons and the complaint to the defendant at defendant's dwelling house or usual place of abode or defendant's place of business or such other place under the circumstances that is most reasonably calculated to apprise the defendant of the existence and pendency of the action . . ." *Id.*

Cummings now argues that service was improper because he does not maintain a regular presence in the Ozwest office in Oregon. Although he visits the office on occasion, he does not have an office or permanent desk there. Nor is he listed on the building's directory. In addition, he maintains that the person served had no business duty to communicate the service to him. Accordingly, he could not have been served at Ozwest's Oregon office.

Oregon follows a two-step analysis when service of process is challenged. First, courts look to see whether the plaintiff has followed one of the methods specified in the rules, which includes the "office service" at issue here. *Boyd v. Boyd,* 884 P.2d 556, 558 (Or. Ct. App. 1994). If the answer is "yes," then service is presumptively proper. If the answer is "no," then courts look to see whether the service satisfied the more general notice requirements of Or. R. Civ. P. 7 D(1), which requires that "Summons shall be served . . . in any manner reasonably calculated, under all the circumstances, to apprise the defendant of the existence and pendency of the action and to afford a reasonable opportunity to appear and defend."

I conclude that Plaintiff properly served Cummings under Oregon's "office service" provision. The nature of modern business practice lends itself to flexibility in matters like this. Presumably there are countless executives, investors and corporate employees who do not maintain a standard "office" in the traditional nine-to-five sense. Instead, they "maintain" an office (the Oregon rule's term), but the office is merely a locus that they might occasionally use, in a physical

2

sense, to conduct business. They work remotely, at home, in hotels, in airports, and they maintain contact with the office through email, texts, and phone. Cummings falls into that pattern.

Importantly, the circumstances of service here strongly suggest that Cummings was in charge of Ozwest's business. When the process server left the summons and complaint with Cindy Baker, the Ozwest office manager, she accepted it on Cummings' behalf without protesting that he did not frequently make in-person visits to the office. This is particularly notable because she rejected the attempt to serve Defendant Zing Toys, Inc. at the same location. Cummings leaves the matter of his relationship with Ozwest as vague as could be imagined, describing himself as "an investor" in Ozwest and as having "connections" with the company, which could mean he owns a fraction of the company or the entire thing. The complaint describes him as the "principal" of the company, and, as noted, he signed the license agreement on behalf of Ozwest. Signing an agreement on behalf of a company means one is more than a mere "investor"—it suggests he is the principal, or at a minimum he is one of the officers of the company granted authority to bind it. Finally, he is listed in Oregon state records as the registered agent for Ozwest, which again points to something other than a passive investor. (ECF No. 24, Ex. L.) Given the fact that Cummings has responded to the allegations of the complaint with only vague non-denials, I conclude Cummings has, at a minimum, a substantial ownership and controlling relationship with Ozwest.

The importance of Cummings' relationship with Ozwest relates to the expectations placed on the office manager. If Cummings were simply an investor with little connection to the company, it would not have been reasonable to attempt to serve him at Ozwest's offices. But if Cummings is in charge, then it would be reasonable to assume the office manager would be under an obligation to communicate to him important matters like the receipt of a summons and complaint. Although

3

Baker, the office manager, filed a declaration stating that she had never received service of process on Cummings' behalf, that is not surprising given the infrequency of civil litigation: Cummings very likely had never been served process in Oregon, or anywhere for that matter. A more convincing statement would have been a declaration stating that she had never communicated business documents of any kind to Cummings, but that is not what she said. Instead, given the parties' relationship, it seems clear that Baker would have routinely communicated with Cummings about business matters, and the existence of a civil lawsuit against both Ozwest and himself would have been among them.

Cummings also argues that Plaintiff never mailed a copy of the summons and complaint to his home, and that because he does not maintain a home in Oregon it would have been impossible to do so. But Plaintiff's counsel mailed copies of the document to the same office location Plaintiff had used for service, which was the "place of business or such other place under the circumstances that is most reasonably calculated to apprise the defendant of the existence and pendency of the action." Or. R. Civ. P. 7D(2)(c). The fact that Cummings did not maintain a home in Oregon is irrelevant. Thus, office service was proper.

Even if service failed to meet the requirements under that section, however, I conclude that service would comply with the more general notice requirements of Oregon law, which requires that the service be "reasonably calculated" to apprise the defendant of the existence and pendency of the action and to afford a reasonable opportunity to appear and defend. "Under this rule, the court examines the totality of the circumstances to determine if the service of summons was reasonably calculated to provide a defendant with notice of the action and a reasonable opportunity to appear and defend." *Williams v. Jett,* 54 P.3d 624, 627 (Or. Ct. App. 2002).

4

The Oregon case of *Boyd v. Boyd* is instructive. There, the defendant worked in construction jobs all around the western United States and maintained no permanent address. The defendant hired a bookkeeper to maintain his checkbook, collect his mail and pay bills. When his ex-wife attempted to serve him through the bookkeeper, the court concluded that although the bookkeeper had a business duty to communicate the service to the defendant, the bookkeeper could not be considered the defendant's "office" because his business was conducted elsewhere, i.e., on construction sites in various western states. 884 P.2d 556 (Or. Ct. App. 1994). Here, by contrast, the Defendant's business is conducted in the office at which service was attempted. When he uses the office, it is for business purposes, and the individuals in the office are engaged in Ozwest's business. Thus, as I found above, office service was effected.

The *Boyd* court found no proper office service, but it concluded that the service satisfied the second prong of the analysis. The bookkeeper had been designated by the defendant as the means by which he paid his child support and thus, implicitly, the bookkeeper was also how he communicated with the world. *Id.* at 559-60. "The arrangement implies that father maintained regular, frequent and predictable contacts with the bookkeeper." *Id.* at 559. That is what has occurred here. Even if Cummings' physical presence at Ozwest's US offices is not frequent, it stretches the imagination to believe he would not have frequent and predictable *contacts* with the office, and he does not deny that is the case. And, having established an office of his company in Oregon, he cannot be surprised that, when sued, he would receive service of process at that location. This is especially true given that he apparently designated himself as the company's registered agent in state corporate filings. Cummings undoubtedly knows about the lawsuit, having filed a

declaration of his own in this very case, and he learned about it not through happenstance but through the fact that he and his company were served at Ozwest's office in Oregon.

The analysis is viewed through the eyes of the party attempting service: was the service of summons "reasonably calculated to provide a defendant with notice?" Here, especially given the absence of other viable addresses, the attempt to serve Cummings at Ozwest's office was perfectly reasonable. Any doubt about that question was removed when Cindy Baker accepted service for Cummings and Ozwest but declined to accept service for Zing Toys. This demonstrates her reasoned judgment that Cummings had a substantial enough connection with the office that she could communicate the summons to him. That reasoned judgment was projected to the process server, who would reasonably conclude that service had been proper.

**II. Personal Jurisdiction is Lacking**

Defendant Cummings also argues that Wisconsin courts have no jurisdiction over him. As an Australian who resides in Hong Kong, and who has never even visited Wisconsin, he argues that he lacks the kind of connections with the state that would require him to answer a civil action in Wisconsin's courts.

Plaintiff responds by arguing that Cummings has waived any objection based on personal jurisdiction because he did not raise the objection within 21 days of being served. But waiver requires an unequivocal expression that jurisdiction is proper, not merely a lapse of a few months between service and a motion to dismiss. "[T]o waive or forfeit a personal jurisdiction defense, a defendant must give a plaintiff a reasonable expectation that it will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex,*

*P.A.*, 623 F.3d 440, 443 (7th Cir. 2010) (citing *American Patriot Ins. Agency, Inc. v. Mutual Risk Management, Ltd.*, 364 F.3d 884, 887–88 (7th Cir. 2004)). Here, after filing their notices of appearance, the very first act Cummings' attorneys performed was to file a motion to dismiss based in part on personal jurisdiction. *H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 848 (7th Cir. 2012) ("Whatever might be said about the merits of DFS's personal jurisdiction objection, there has never been any doubt up to this point that it contests the issue.") Neither the Plaintiff nor the Court ever labored under the misperception that Cummings was conceding that a Wisconsin federal court had personal jurisdiction over him. Accordingly, I conclude the defense is not waived.

Waiver was the only argument put forward against Cummings' personal jurisdiction defense, and as such it might be said that any other arguments in favor of jurisdiction would themselves be waived. In any event, it seems clear that Cummings has almost no conceivable personal connection with Wisconsin, and thus the Due Process Clause would not tolerate the exercise of jurisdiction over him. *Felland v. Clifton,* 682 F.3d 665, 678 (7th Cir. 2012) ("Once the requirements of due process are satisfied, then there is little need to conduct an independent analysis under the specific terms of the Wisconsin long-arm statute itself because the statute has been interpreted to go to the lengths of due process.")

Here, the complaint merely alleges that Cummings is the principal of a corporation that does some business in Wisconsin. But the law treats corporations as entities separate and distinct from their owners, and thus the mere fact that a company might do business here does not warrant exercising jurisdiction over the company's investors. *Hart–Hanks Direct Marketing/Baltimore, Inc. v. Varilease Tech. Fin. Group, Inc.*, 299 F.Supp.2d 505, 513 (D. Md.2004) ("Personal jurisdiction

7

over an individual officer, director, employee and owner of a corporation does not automatically follow from personal jurisdiction over the corporation.") Without any argument to the contrary, it is impossible to conclude that a Wisconsin court would have personal jurisdiction over Cummings. Accordingly the motion to dismiss under Fed. R. Civ. P. 12(b)(2) will be granted.

## III. Conclusion

For the reasons given above, I conclude service of process was accomplished on Defendant Cummings. However, this Court lacks personal jurisdiction over Cummings. The motion to dismiss, pursuant to Rule 12(b)(2), will therefore be **GRANTED**.

**SO ORDERED** this 3rd day of February, 2015.

/s William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court